## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **JOYCE ROBINSON,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 1:07-cv-1641** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **CONSOLIDATED RAIL CORPORATION,** | : | |
| **(A Pennsylvania Corporation licensed to do** | : | |
| **business in New Jersey); NORFOLK** | : | |
| **SOUTHERN CORP., NORFOLK** | : | |
| **SOUTHERN RAILROAD CORP., JOHN** | : | |
| **DOES (1-10), AND ABC CORPORATION** | : | |
| **(1-10),** | : | |
| **Defendants.** | : | |

### MEMORANDUM

Pending before the Court are Defendant Norfolk Southern Corporation and Defendant Norfolk Southern Railroad Corp.'s ("Defendants") Motion for Summary Judgment and Brief in Support (Doc. Nos. 69, 70), Plaintiff Joyce Robinson's Brief in Opposition (Doc. No. 80), and Defendants' Reply Brief (Doc. No. 81). The motions have been fully briefed and are ripe for disposition. For the reasons that follow, the Court will deny Defendants' Motion for Summary Judgment as to Plaintiff's Title VII claim for discrimination in the course of her employment and Plaintiff's hostile work environment claim for discrimination on the basis of her race. The Court will stay the case for further briefing as to whether Plaintiff has exhausted her Title VII termination claims before the Pennsylvania Human Rights Commission and the Equal Employment Opportunity Commission. Finally, the Court will grant Defendants' Motion for Summary Judgment on the balance of Plaintiff's claims.

## I.  FACTUAL BACKGROUND[1]

Plaintiff Joyce Robinson is a resident of Harrisburg, Pennsylvania.  Defendants Norfolk

Southern Corp. and Norfolk Southern Railway Co. ("Defendants") are Virginia corporations

with principal places of business in Norfolk, Virginia.  Plaintiff has worked in the railroad

industry since 1977, when she began employment with Conrail.  (Doc. No. 80-2 ¶ 3.)  She

became a locomotive engineer in 1994.  (Id.)  Plaintiff became an employee of Defendant

Norfolk Southern in June 1999, on the "split date" when Norfolk Southern took over parts of

Conrail's operations, including those in the Harrisburg area, where Plaintiff was based. (Doc.

No. 71 ¶ 3).[2]

As an engineer, Plaintiff participated in a yearly two-day safety rule training class, which

including training on harassment.  (Id. ¶ 8-9.)  Defendants had EEO policy postings on the wall

and a written policy on harassment and discrimination, both of which Plaintiff can recall.  (Id. ¶

10.)  Based on Defendants' training sessions, Plaintiff was aware that Defendants had a

_____

[1] In accordance with the standard of review of a motion for summary judgment, the Court will consider all evidence in the light most favorable to Plaintiff.

[2] Plaintiff's Response to Defendants' Statement of Facts (Doc. No. 80) failed in large part to comply with the requirement that she cite evidence in support of her disputes of any facts. Fed. R. Civ. P. 56(e)(2); see also M.D. Pa. Local Rule 56.1.  Local Rule 56.1 provides, in relevant part:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement [of the moving party] as to which it is contended that there exists a genuine issue to be tried. Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

M.D. Pa. L.R. 56.1.  As Defendants point out, Plaintiff's responses to 130 paragraphs of facts contain only 13 citations to record evidence. Consequently, Plaintiff's unsupported denials or disputes of fact, as well as her unsupported commentary and argument, fail to abide by Local Rule 56.1, cannot create a genuine issue of material fact, and Defendants' supported facts will be deemed admitted.

harassment reporting procedure in place that involved reporting any incidents to a supervisor and then to human resources, and if the supervisor was the accused harasser, to the next supervisor up the chain. (Id. ¶ 11.)

Over the course of her employment, Plaintiff alleges that she was subject to a number of discriminatory acts based on her race or her sex. On August 19, 2001, Plaintiff was sent home for failing to wear proper footwear while operating a train, thereby losing a day's pay. (Doc. No. 80-2 ¶ 7.) Plaintiff alleges a white male co-worker merely received a noncompliance letter for the same infraction. (Id.)

In July 2003, after failing to wear safety glasses, Plaintiff was placed in a safety training program. (Doc. No 80-2 ¶ 8.) Plaintiff alleges that a male co-worker merely received a letter of noncompliance for the same infraction. (Id.)

Plaintiff also alleges that over the course of her employment, she was repeatedly not allowed to use the ladies bathroom in Defendants' Allentown facility, instead being told to either use the men's bathroom or to go off-site to use the bathroom. (Doc. No. 80-2 ¶ 12; Doc. No. 81, at 12.)

On August 5, 2003, Plaintiff's car was vandalized while in the Harrisburg, Pennsylvania train yard. (Doc. No. 80-2 ¶ 9.) The headlights were smashed and the hood of the car was dented. (Id.)

On March 9, 2004, Plaintiff noticed a flier on the bulletin board of her workplace that had intimidating remarks written about her on it, including racially motivated statements. (Doc. No. 80-2 ¶ 10.)

On March 19, 2004, Plaintiff's car was again vandalized in the Harrisburg, Pennsylvania train yard. (Doc. No. 80-2 ¶ 11.) Her car had carvings of "KKK" and "white power" on both

doors, and the roof had been hit. (Id.)

Defendants were vigilant in investigating the acts of vandalism against Plaintiff. When Plaintiff's car was vandalized at the Harrisburg yard in August 2003, Plaintiff reported it to the Norfolk Southern police. (Doc. No. 71 ¶ 124.) The Norfolk Southern police investigated, but were unable to find the culprit. (Id.) Likewise, when Plaintiff found a flyer on a bulletin board in March 2004 with offensive comments, Plaintiff again reported the comment to Norfolk Southern police. (Id. ¶ 126) The Norfolk Southern police investigated, as did Defendants' EEO office. (Id. ¶ 127.) Nearly two dozen employees were interviewed in the investigation, and handwriting samples were obtained from about 15 employees and reviewed by an independent expert. (Id. ¶ 128.) However, the investigation was unable to determine a culprit. (Id.) When Plaintiff's car was vandalized in March 2004, she again reported it to Norfolk Southern Police and complained to a representative of her union. (Id. ¶ 129.) Again Norfolk Southern police and the EEO office investigated: nearly 50 employees were interviewed, handwriting samples were obtained and analyzed by an independent expert, posters were put up, and security cameras were installed at the yard. (Id.)

Plaintiff's employment was terminated on July 15, 2005. (Doc. No. 71 ¶ 35.) Defendant claims that Plaintiff's termination was related to Plaintiff's involvement in a train derailment in March 2005. (Id. ¶ 35.) Plaintiff alleges that the termination was strictly gender and racial based discrimination. (Doc. No. 80-2 ¶ 15.) An investigative hearing was held concerning the train derailment, wherein Plaintiff was determined to be guilty of:

> (1) failure to stop short of and running through a switch; (2) failure to announce that the train was in emergency; (3) failing to inspect or to arrange for inspection of train after emergency brake applied and prior to moving; (4) putting the train in reverse without permission resulting in derailment of the locomotive, and doing so without protection or arranging for protection of the rear of the train; and (5) causing a delay of operations.

(Doc. No. 71 ¶ 36.)  Plaintiff appealed her termination to a Public Law Board, which unanimously affirmed her termination on June 30, 2006.  (Id. ¶ 42.)  In determining that termination was an appropriate discipline, the Public Law Board noted that Plaintiff "had numerous minor and serious rules violations" and that she had "been disciplined eight more times in a period of two and one-half years."  (Id. ¶ 43.)  These disciplinary actions included suspensions and various other reprimands for acts such as passing a signal in December 2001, to the improper handling of a train in January 2004. (Id. ¶¶ 43, 54.)

Over the course of her employment, Plaintiff filed three separate verified complaints against her employer with the Pennsylvania Human Rights Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC").  On September 25, 2003, Plaintiff filed a verified complaint against Defendants with the PHRC and the EEOC.  (Doc. No. 71 ¶ 81.)  The 2003 complaint contained two counts of harassment based on sex discrimination and race discrimination.  (Id.)  Plaintiff's September 2003 complaint to the PHRC was based on alleged misconduct where white male employees were not disciplined for the same acts as Plaintiff. (Id. ¶ 82.)  On September 26, 2006, the PHRC issued a letter denying Plaintiff's request for a preliminary hearing because her charge was not substantiated. (Id. ¶ 85.) On January 17, 2007, the EEOC issued a right to sue letter based on the Plaintiff's 2003 complaint. (Id. ¶ 86.)

On August 3, 2004, Plaintiff filed a second verified complaint against Defendants with the PHRC and dual-filed with the EEOC.  (Doc. No. 71 ¶ 87.)  The complaint contained four different counts. (Id.)  The first two counts were sex and race discrimination claims based on Plaintiff's 30-day suspension in May 2004 for failing to properly turn in a medical excuse relating to a January 2004 eye injury. (Id. ¶¶ 87-88.) The second two counts were retaliation claims for discrimination based on Plaintiff's suspension. (Id.)  Plaintiff claimed that

Defendants' employees had retaliated against her for her earlier PHRC complaint in 2003. (Id.) On September 26, 2006, the PHRC issued a letter denying Plaintiff's request for a preliminary hearing because the charge was not substantiated. (Id. ¶ 91.) On January 17, 2007, the EEOC issued a right to sue letter based on Plaintiff's 2004 amended complaint. (Id. ¶ 92.)

In November 2005, Plaintiff filed her third verified complaint against her employer with the PHRC and dual-filed with the EEOC. (Doc. No. 71 ¶ 93.) The 2005 complaint contained four counts based on Plaintiff's termination from Defendant in July 2005. (Id.) Counts 1 through 4 asserted her termination was due to Plaintiff's gender, age, and race – and that her termination was in retaliation for her two earlier PHRC complaints. (Id.) Neither the PHRC nor the EEOC have issued a determination or a right to sue letter based on the 2005 complaint.

## II.    PROCEDURAL BACKGROUND

On April 4, 2007, Plaintiff filed an eleven-count Complaint in the Superior Court of New Jersey. (Doc. No. 1, Ex. A.) Plaintiff's complaint alleged counts for wrongful discharge; breach of contract; breach of the duty of good faith and fair dealing; a claim under the New Jersey Law Against Discrimination; a claim under the Federal Employers Liability Act; claims under Title VII for discrimination in employment, termination, and a hostile work environment; and claims for intentional and negligent infliction of emotional distress. (Id.)

Defendants removed the case to the United States District Court for the District of New Jersey on June 8, 2007.[3] (Id.) On August 30, 2007, with the consent of the parties, the New Jersey District Court transferred the case to this Court. (Doc. No. 15.) The case was then referred to Magistrate Judge Blewitt to allow the parties to conduct discovery. (Doc. No. 57.)

---

[3] Defendant Consolidated Railroad Corporation was dismissed as a defendant by the New Jersey District Court on August 27, 2007. (Doc. No. 13.)

On July 2, 2007, while the case was pending in the District of New Jersey, Defendants filed a motion to dismiss. (Doc. No. 7.) On December 31, 2008, after the case had been transferred to this Court and at the conclusion of discovery, Defendants filed a motion for summary judgment accompanied by a brief in support. (Doc. Nos. 69, 70.) On February 12, 2009, after receiving an extension of time to file, Plaintiff filed a brief in opposition to summary judgment. (Doc. No. 80.) Finding that the legal arguments made in the motion to dismiss were incorporated in the motion for summary judgment and could be fully decided in an order addressing the summary judgment motion, this Court denied Defendants' July 2, 2007 motion to dismiss as moot. (Doc. No. 84.) The Court now addresses Defendants' motion for summary judgment.

## III.    STANDARD OF REVIEW

Defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d

135, 145-46 (3d Cir.2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir.2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

## IV.    DISCUSSION

At the outset, Plaintiff acknowledges that four counts of her complaint should be dismissed. (Doc. No. 80, at 2.) These counts are for wrongful discharge, breach of contract, breach of the duty of good faith and fair dealing, and a claim under the New Jersey Law Against Discrimination. (Id.) Since the parties agree these counts should be dismissed, the Court will do so without further analysis. Thus, Plaintiff's remaining claims to be addressed are: (1) a claim under the Federal Employers Liability Act ("FELA"); (2) a claim for violation of Title VII; (3) a hostile work environment claim; (4) a claim for intentional infliction of emotional distress; and (5) a claim for negligent infliction of emotional distress. The Court will address each claim in

turn.

**A.     FELA Claim**

"[FELA] provides that employees of common-carrier railroads may recover for work-related injuries caused in whole or in part by their railroad-employer's negligence." <u>CSX Transp., Inc. v. Hensley</u>, -- U.S. --, 129 S.Ct. 2139, 2140 (2009) (per curiam).  Under FELA, every common carrier by railroad:

> while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.  In <u>Consolidated Rail Corp. v. Gottshall</u>, 512 U.S. 532, 554 (1994), the Supreme Court addressed the proper standard for evaluating claims for negligent infliction of emotional distress brought under FELA.  In reviewing the various methods that state courts had traditionally used to deal with claims for emotional distress, the Supreme Court held that the common-law test of the "zone of danger" must be applied to such claims under FELA.  <u>Id.</u> at 554-57.  The Supreme Court explained:

> The zone of danger test . . . is consistent with FELA's central focus on physical perils. We have recognized that FELA was intended to provide compensation for the injuries and deaths caused by the physical dangers of railroad work by allowing employees or their estates to assert damages claims. By imposing liability, FELA presumably also was meant to encourage employers to improve safety measures in order to avoid those claims. As the Seventh Circuit has observed, FELA was (and is) aimed at ensuring "the security of the person from physical invasions or menaces."  But while the statute may have been primarily focused on physical injury, it refers simply to "injury," which may encompass both physical and emotional injury.

<u>Gottshall</u>, 512 U.S. at 555-56 (citations removed).  Thereafter, the Supreme Court announced the test for courts to employ in FELA emotional distress claims:

> Under this test, a worker within the zone of danger of physical impact will be able to

recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not. *Railroad employees thus will be able to recover for injuries-physical and emotional-caused by the negligent conduct of their employers that threatens them imminently with physical impact.* This rule will further Congress' goal in enacting the statute of alleviating the physical dangers of railroading.

Id. (emphasis added). Claims under FELA must be commenced within three years "from the day the cause of action accrued." 45 U.S.C. § 56. The Third Circuit has recognized that "[w]hen an employee is injured in a traumatic incident, determination of the beginning of the limitations period generally presents little difficulty." Kichline v. Consolidated Rail Corp., 800 F.2d 356, 358 (3d Cir. 1986). Yet "[w]hen the injury . . . is an occupational disease that has an indefinite beginning and progresses insidiously over many years, the statute of limitations, particularly the statutory accrual factor, becomes more difficult to measure." Id. In the case of such a latent disease, the Third Circuit has expressly determined it to be "when the employee becomes aware of his disease and its cause." Id.; see also Matter of Central R. Co. of New Jersey, 950 F.2d 887, 892 (3d Cir. 1991) (noting Kichline "remains controlling authority in this Circuit as to the accrual of causes of action arising under FELA").

Defendants argue that Plaintiff's FELA claim is time-barred since the last alleged event of discrimination occurred on March 19, 2004, more than three years before the Complaint was filed on April 4, 2007. (Doc. No. 7-2, at 8.) Furthermore, Defendants aver that the FELA claim must fail because Plaintiff has not shown that she was in imminent danger of physical impact. (Id.) In opposition, Plaintiff agrees that specific instances of harassment and discrimination ended on March 19, 2004. (Doc. No. 14, at 6.) However, Plaintiff attempts to extend the starting date of the statute of limitations until late 2005 by alleging that is when she determined the cause of her nervous breakdown to be the March 2004 harassment. (Doc. No. 14, at 6-7.) At the same time, Plaintiff has alleged that she was placed in immediate risk of physical harm when

she saw racially charged statements written on a bulletin board at work and when she found her car vandalized. (Doc. No. 80, at 27.)

The Court finds the Plaintiff's position untenable. Plaintiff's claim that she was within the "zone of danger" would have accrued on March 19, 2004, at the moment that Plaintiff believed she was placed in immediate risk of physical harm. Plaintiff has presented no evidence, scientific or otherwise, to demonstrate a causal link between a nervous breakdown and the harassment in March 2004. Nor has Plaintiff presented sufficient evidence to show why her claim that accrued in March 2004 should have been tolled. Therefore, Plaintiff's claim fails as a matter of law, and the Court will grant the Defendant's motion for summary judgment on the FELA claim.

**B.     Title VII Claims**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has recognized no difference in standards applicable to racially and sexually hostile work environments. West v. Philadelphia Elec. Co., 45 F.3d 744, 753 n.7 (3d Cir. 1995) (citing Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993)).

"Before bringing suit under Title VII in federal court, a plaintiff must first file a charge with the EEOC." Webb v. City of Philadelphia, 562 F.3d 256, 262 (3d Cir. 2009). "The purpose of this administrative exhaustion requirement is to put the EEOC on notice of the plaintiff's claims and afford it 'the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'" Id. (citation omitted).

Defendants have attacked Plaintiff's Title VII claims wholesale, arguing that Plaintiff's discriminatory action and termination claims should be dismissed since Plaintiff has not exhausted her administrative remedies as to her termination claim under Title VII.  However, Plaintiff has shown that she received right-to-sue letters from the EEOC for the discriminatory actions she alleged occurred during her employment with Defendants.  In her 2003 and 2004 complaints to the PHRC and the EEOC, Plaintiff alleges that she was discriminated against based on her race and her sex when she was harassed by a trainmaster employed by Defendants. Plaintiff also alleges that her 2004 suspension was done in retaliation for her 2003 complaint to the PHRC.

Since the Plaintiff has exhausted her claims for discriminatory actions taken during the course of her employment, these claims will be allowed to proceed.  The Court will deny Defendants' summary judgment motion as to this portion of Plaintiff's complaint.

The same is not the case for Plaintiff's Title VII termination claim.  In her August 28, 2007 Brief in Opposition to the Defendants' motion to dismiss, the Plaintiff states that the PHRC "either has or is about to memorialize in writing a probable cause finding . . . against defendant Norfolk Southern in favor of plaintiff."  (Doc. No. 14, at 13.)  However, Plaintiff has yet to produce such a probable cause finding.

The Third Circuit has noted that a district court that is aware of outstanding administrative claims may stay a case *sua sponte*.  Churchill v. Star Enterprises, 183 F.3d 184, 191-92 (3d Cir. 1999).  Such a stay may be appropriate where a plaintiff's related claims may later be barred by claim preclusion.  See id. at 192-94 ("We believe that district courts are likely to look favorably on applications for stays of FMLA proceedings while plaintiffs promptly pursue administrative remedies under Title VII and similar state laws and we urge them to do

so.").

However, this does not relieve a plaintiff of the necessity to take steps to preserve her claims. Id. at 192-92. A party must wait 180 days after filing a charge with the EEOC for Title VII violations before being able to forego the administrative process and file suit in court. Id. at 190 (citing 42 U.S.C. § 2000e-5(e)(1)). After 180 days, "[i]f a complainant is dissatisfied with the progress the EEOC is making on his or her charge of employment discrimination, he or she may elect to circumvent the EEOC procedures and seek relief through a private enforcement action in a district court." Occidental Life Ins. Co. of California v. EEOC, 432 U.S. 355, 361 (1977). The EEOC must issue the necessary right to sue letter upon request. See McNasby v. Crown Cork and Seal Co., 888 F.2d 270, 274 n.3 (3d Cir.1989).

Likewise, a party must wait one year after filing charges with the PHRC for alleged Pennsylvania Human Relations Act (PHRA) violations before having the option to forego the state administrative process and file suit in court. See 43 Pa. Stat. Ann. § 962(c)(1). After one year passes, and the Commission either dismisses the complaint or has not entered into a conciliation agreement, "the Commission must so notify the complainant." Id. "On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act." Id. An action under the PHRA "shall be filed within two years after the date of notice from the Commission closing the complaint." Id. § 962(c)(2).

It is unclear from the record whether Plaintiff sought a right to sue letter 180 days after filing with the EEOC. Likewise, it is also unclear whether the PHRC has ever given notice to Plaintiff about the status of her case.

Therefore, the Court will stay the case for 30 days and order the parties to provide further

briefing specifically on the issue of whether Plaintiff has exhausted her administrative remedies on her Title VII termination claim with the EEOC and the PHRC.

**C.    Hostile environment claim**

To establish a hostile work environment claim under Title VII, a plaintiff must prove (1) she suffered intentional discrimination because of her race (or sex); (2) the discrimination was "pervasive and regular"; (3) the discrimination detrimentally affected her; (4) the discrimination was sufficiently severe to have detrimentally affected a reasonable person in her position; and (5) a prima facie case of respondeat superior liability against her employer. <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1482 (3d Cir.1990). A hostile work environment cannot be analyzed on an incident-by-incident basis, but rather the court must examine the totality of the circumstances. <u>Konstantopoulos v. Westvaco Corp.</u>, 112 F.3d 710, 715 (3d Cir.1997).

"An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment." <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 756 (1998). "The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." <u>Id.</u> at 757. Yet "[i]n limited circumstances, agency principles impose liability on employers even where employees commit torts outside the scope of employment." <u>Id.</u> at 758. The "requirement[] will always be met when a supervisor takes a tangible employment action [such as the denial of a promotion or a raise] against a subordinate." <u>Id.</u> at 762-63. When no tangible employment action is present, a defending employer may raise an affirmative defense comprised of two necessary elements: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective

14

opportunities provided by the employer or to avoid harm otherwise.  Id. at 765.

Defendants argue that Plaintiff's hostile work environment claim should fail because Plaintiff did not assert it in any of her three PHRC charges and therefore she has failed to exhaust her administrative remedies on the claim. (Doc. No. 70, at 11.)  Defendants further argue that even if Plaintiff exhausted her administrative remedies, her claim fails on the merits since Plaintiff has not produced evidence that the alleged harassment was motivated by her race or sex or that Defendants are vicariously liable. (Id. at 14.)

### i.  Plaintiff exhausted her administrative remedies

"Because the aim of the statutory scheme is to resolve disputes by informal conciliation, prior to litigation, suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle."  Anjelino v. New York Times Co., 200 F.3d 73, 93 (3d Cir. 1999).  The Third Circuit has affirmed that the "parameters of a civil action in the District Court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission."  Id. (citation removed).  Therefore, where the EEOC has had cognizance of the full scope of the situation during its settlement efforts, the purpose of the notification requirement has been served.  Id.; see, e.g., Webb, 562 F.3d at 262-63 (finding that a sex discrimination claim fell outside scope where plaintiff only filed a charge of religious discrimination with the EEOC).

Although Plaintiff did not use the phrase "hostile work environment" in her 2003 and 2004 complaints filed with PHRC and the EEOC, Plaintiff's claims for a hostile work environment are those which could reasonably have been expected to grow out the sex and race

discrimination charges she filed. The hostile work environment claim is based on Plaintiff's sex and race claims and is based on some of the same allegations in her administrative complaints. Therefore, Plaintiff's hostile work environment claim falls within the scope of her sex and race discrimination claims and summary judgment would be inappropriate on this basis.

## ii.    Evidence of discrimination

Defendant argues that Plaintiff has not suffered discrimination because of her race or sex. (Doc. No. 70.) A hostile work environment cannot be analyzed on an incident-by-incident basis, but rather the court must examine the totality of the circumstances. Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 715 (3d Cir.1997)

In this case, the Court holds that Plaintiff has presented sufficient evidence that a genuine issue of material fact exists as to whether she was subject to a hostile work environment on the basis of her race. Indeed, plaintiff has alleged a number of facts that could support her claim. In August 2003, Plaintiff's car was vandalized in the parking lot of the Harrisburg yard, her headlights were smashed, and the hood of the car was dented. On March 9, 2004, Plaintiff found a flyer on the bulletin board at work that had racially motivated intimidating statements written about Plaintiff. Less than two weeks later, on March 19, 2004, Plaintiff found her car vandalized again in the parking lot of the Harrisburg yard. The car had carvings of "KKK" and "white power" on both doors, and the roof had been struck.

Defendants raise the defense available under Ellerth that they should not be held vicariously liable. The acts of vandalism were clearly not tangible employment actions. Therefore, the proper inquiry is (1) whether Defendants exercised reasonable care to prevent and correct promptly the harassing behavior, and (2) whether Plaintiff unreasonably failed to take

advantage of any preventive or corrective opportunities provided by the Defendants or to avoid harm otherwise.  Ellerth, 524 U.S. at 765.

Although Defendants are able to satisfy the first prong of the Ellerth defense, they are unable to satisfy the second.  Defendants presented ample evidence that they exercised reasonable care to prevent any racially harassing behavior toward Plaintiff and that they promptly investigated the acts of vandalism against her.  Yet Defendants were made aware of Plaintiff's concerns throughout her employment.  The complaints she filed in 2003 and 2004 with the PHRC and the EEOC demonstrate that the Plaintiff provided notice to the Defendant of concerns she had about discrimination in the workplace.  Likewise, Defendants were made aware of the various acts of vandalism that Plaintiff reported to Norfolk Southern police and that were investigated by Norfolk Southern police and Defendants' EEO office.  Plaintiffs failure to use the in-house complaint procedures at Norfolk Southern may provide an issue as to her credibility and to the severity of the harassment toward her.  See, e.g., Cardenas v. Massey, 269 F.3d 251, 259-60 (3d Cir. 2001) (noting that "at most, if [plaintiff's failure to file a complaint with employer] sent a mixed message, it would be an issue going to his credibility as to the severity of the harassment").  Because there remain genuine issues of material fact, summary judgment is inappropriate as to the hostile work environment claim on the basis of Plaintiff's race.

In contrast, the Court finds that any hostile work environment claim on the basis of Plaintiff's sex fails.  In order to be actionable, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998). Faragher directed courts to "[look] at all the circumstances, including

the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." 524 U.S. at 787-788 (internal cite omitted).  Plaintiff has pointed to incidents in which she was disciplined for failing to follow Defendants' policies, and alleged that she was dealt with differently than her male colleagues.  Plaintiff has also alleged that a woman's bathroom in Allentown was often locked.  However, Plaintiff has failed to demonstrate any evidence that these actions were frequent, were offensive or threatening, or that they unreasonably interfered with her work performance.  Therefore, the Court finds that, under the totality of the circumstances, Plaintiff's hostile work environment on the basis of her sex fails.

### D. Intentional and negligent infliction of emotional distress claims

Defendant argues that both Plaintiff's intentional and negligent infliction of emotional distress claims fail because they are time-barred and because the negligence claim is preempted by FELA. (Doc. No. 7-2, at 2.)  Since the Court finds that the statute of limitations has run on both claims, the Court will not address the preemption issue.

The statute of limitations for intentional infliction of emotional distress in Pennsylvania is two years from the date of the last conduct. 42 Pa. Cons. Stat. Ann. § 5524; see, e.g., Garvin v. City of Philadelphia, 354 F.3d 215, 219 (3d Cir. 2003).  Under Pennsylvania law, "a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion." Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005) (citing Kapil v. Ass'n of Pa. State Coll. & Univ. Faculties, 470 A.2d 482, 485 (Pa.1983)). Thus, "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." Id. (citations omitted). "Generally speaking, in a suit to recover damages for personal injuries, this right arises when the injury is

inflicted." Id. (citing Ayers v. Morgan, 154 A.2d 788, 791 (Pa.1959)).

In this case, Plaintiff agrees that the last specific instances of harassment and discrimination occurred when her car was vandalized on March 19, 2004. (Doc. No. 13, at 6.) The Court finds that her claim accrued on that date. Since Plaintiff did not file suit until April 4, 2007, her intentional and negligent infliction of emotional distress claims are barred by the statute of limitations.

## V.      CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be denied as to Plaintiff's claims under Title VII for discrimination and Plaintiff's hostile work environment claim on the basis of race.  The case will be stayed for further briefing on Plaintiff's Title VII termination claim.  The Court will grant Defendant's Motion for Summary Judgment as to the remainder of Plaintiff's claims.  An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| JOYCE ROBINSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:07-cv-1641 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| CONSOLIDATED RAIL CORPORATION, | : | |
| (A Pennsylvania Corporation licensed to do | : | |
| business in New Jersey); NORFOLK | : | |
| SOUTHERN CORP., NORFOLK | : | |
| SOUTHERN RAILROAD CORP., JOHN | : | |
| DOES (1-10), AND ABC CORPORATION | : | |
| (1-10), | : | |
| Defendants. | : | |

## ORDER

**AND NOW**, this 22nd day of October, 2009, upon consideration of the Defendants'

Motion for Summary Judgment and the Plaintiff's Brief in Opposition thereto, it is hereby

**ORDERED**:

1. That Defendants' Motion for Summary Judgment as to Plaintiff's Title VII claims

   for discrimination in the course of her employment is **DENIED**.

2. That Defendant's Motion for Summary Judgment as to Plaintiff's hostile work

   environment claim on the basis of her race is **DENIED**.

3. That the case will be **STAYED** for 30 days to allow the parties to brief the Court

   on whether Plaintiff has exhausted her remedies before the PHRC and the EEOC

   as to Plaintiff's Title VII termination claim.

4. That the remainder of Defendants' Motion for Summary Judgment (Doc. No. 69)

   is **GRANTED**.  The balance of Plaintiff's claims will be **DISMISSED**.

5.       The Clerk of Court is instructed to defer entering judgment on these claims until all

claims have been resolved.

                              S/ Yvette Kane
                              Yvette Kane, Chief Judge
                              United States District Court
                              Middle District of Pennsylvania
                              Dated: October 22, 2009