IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOYCE ROBINSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:07-cv-1641 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| CONSOLIDATED RAIL CORPORATION, | : | |
| (A Pennsylvania Corporation licensed to do | : | |
| business in New Jersey); NORFOLK | : | |
| SOUTHERN CORP., NORFOLK | : | |
| SOUTHERN RAILROAD CORP., JOHN | : | |
| DOES (1-10), AND ABC CORPORATION | : | |
| (1-10), | : | |
| Defendants | : | |

## MEMORANDUM

Pending before the Court is Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation's motion for reconsideration (Doc. No. 104) of this Court's October 22, 2009 memorandum and order, granting in part and denying in part Defendants' motion for summary judgment. (Doc. No. 99.) The motion for reconsideration has been has been fully briefed and is ripe for disposition. For the following reasons, the Court will grant the motion.

I.     Discussion

A motion for reconsideration is a device of limited utility. Its purpose is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a

1

clear error of law or fact or to present manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is appropriate in instances where the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Rohrbach v. AT & T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in part on other grounds on reconsideration, 915 F. Supp. 712 (M.D. Pa. 1996) (citation omitted). It may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citation omitted).

The factual background of this case is laid out in this Court's Memorandum and Order of October 22, 2009, and need not be reproduced here. In the October 22, 2009 Order, the Court denied Defendants' motion for summary judgment as to Plaintiff's Title VII claims for discrimination in the course of her employment and as to Plaintiff's hostile work environment claim on the basis of her race. (Doc. No. 99 at 20.) The Court stayed the case for 30 days to allow the parties to brief the Court on whether Plaintiff exhausted her remedies before the PHRC or the EEOC as to Plaintiff's Title VII termination claim. (Id.) The Court dismissed all of Plaintiff's other remaining claims. (Id.) Specifically, the Court found that Plaintiff's claim under the Federal Employers Liability Act was time barred (id. at 11); that her hostile work

environment claim on the basis of her sex was inadequate as a matter of law (id. at 18); and that her intentional and negligent infliction of emotional distress claims were also time barred (id. at 19). In addition, Plaintiff voluntarily waived her claims for wrongful discharge, breach of contract, breach of the duty of good faith and fair dealing, and a claim under the New Jersey Law Against Discrimination. (Id. at 8.)

In the motion presently before the Court, Defendants have asked for reconsideration of the portion of this Court's October 22, 2009 Memorandum and Order that denied Defendants summary judgment on the Title VII discrimination claim and hostile work environment claim based on race.

### A. Title VII Hostile Work Environment Claim

In denying Defendants' motion for summary judgment as to Plaintiff's hostile work environment claim, the Court found that Plaintiff had exhausted her administrative remedies and that there were genuine issues of material fact over whether the alleged harassment was motivated by her race and whether Defendants were vicariously liable. (See Doc. No. 99 at 14-18.)

In their brief in support of reconsideration, Defendants argue that the Court erroneously applied the standard for imputing liability for *supervisory* harassment to incidents where the standard of imputing liability should have been for *anonymous* harassment. (Doc. No. 105 at 4-12.) The Court agrees. In the October 22, 2009 Order, the Court identified the analysis set by the Supreme Court in Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), to deal with "negligent and intentional torts committed by an employee within the scope of his or her employment." Ellerth, 524 U.S. at 756. Under such a framework,

3

> "The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." Id. at 757. Yet "[i]n limited circumstances, agency principles impose liability on employers even where employees commit torts outside the scope of employment." Id. at 758. The "requirement[] will always be met when a supervisor takes a tangible employment action [such as the denial of a promotion or a raise] against a subordinate." Id. at 762-63. When no tangible employment action is present, a defending employer may raise an affirmative defense comprised of two necessary elements: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Id. at 765.

(Doc. No. 99 at 14-15 (citing Ellerth, 524 U.S. 742).) This analysis is the appropriate framework to analyze actions taken against Plaintiff by known supervisors, but it is not the standard that should have been applied where acts of vandalism were done by anonymous tortfeasors. Rather, as the Third Circuit Court of Appeals recently stated:

> When the hostile work environment is created by a victim's non-supervisory coworkers, the employer is not automatically liable. Rather, employer liability for co-worker harassment exists only if the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

Huston v. Procter & Gamble Paper Products Corp., 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). Therefore, the Court committed a clear error by addressing all the actions against Plaintiff in the hostile work environment claim under the standard established for vicarious liability of supervisor conduct where the conduct that formed the basis of Plaintiff's claim was done by anonymous actors.

In acknowledging that the acts of harassment were done against Plaintiff by anonymous actors–rather than by her supervisors–the Court finds that Defendants have established that they

4

cannot be held vicariously liable. "An employer's remedial action is adequate 'if it is reasonably calculated to prevent further harassment.'" Huston, 568 F.3d at 110 (quoting Knabe v. Boury Corp., 114 F.3d 407, 412 n.8 (3d Cir. 1997)). As the Third Circuit has explained:

> A remedial action that effectively stops the harassment will be deemed adequate as a matter of law. On the other hand, it is possible that an action that proves to be ineffective in stopping the harassment may nevertheless be found reasonably calculated to prevent future harassment and therefore adequate. Thus, where an employer's prompt remedial action is not effective (or, as in this case, where the effectiveness of the prompt remedial action cannot be tested), courts may still decide that the action was adequate as a matter of law.

Knabe, 114 F.3d at 412 n.8, 413 (finding remedial action is adequate as a matter of law where a company made known its zero-tolerance harassment policy and provided the harassed employee with immediate contact information regarding any future complaints). "Even if the remedial action does not stop the alleged harassment, it is 'adequate' if it is 'reasonably calculated' to end the harassment." Andreoli v. Gates, 482 F.3d 641, 644 (3d Cir. 2007) (citation and footnote omitted).

As this Court has previously acknowledged, "Defendants presented ample evidence that they exercised reasonable care to prevent any racially harassing behavior toward Plaintiff and that they promptly investigated the acts of vandalism against her." (Doc. No. 99 at 17.) Specifically, the Court found that:

> Defendants were vigilant in investigating the acts of vandalism against Plaintiff. When Plaintiff's car was vandalized at the Harrisburg yard in August 2003, Plaintiff reported it to the Norfolk Southern police. (Doc. No. 71 ¶ 124.) The Norfolk Southern police investigated, but were unable to find the culprit. (Id.) Likewise, when Plaintiff found a flyer on a bulletin board in March 2004 with offensive comments, Plaintiff again reported the comment to Norfolk Southern police. (Id. ¶ 126) The Norfolk Southern police investigated, as did Defendants' EEO office. (Id. ¶ 127.) Nearly two

5

> dozen employees were interviewed in the investigation, and handwriting samples were obtained from about 15 employees and reviewed by an independent expert. (Id. ¶ 128.) However, the investigation was unable to determine a culprit. (Id.) When Plaintiff's car was vandalized in March 2004, she again reported it to Norfolk Southern Police and complained to a representative of her union. (Id. ¶ 129.) Again Norfolk Southern police and the EEO office investigated: nearly 50 employees were interviewed, handwriting samples were obtained and analyzed by an independent expert, posters were put up, and security cameras were installed at the yard. (Id.)

(Doc. No. 99 at 4.) In the present case, employer liability cannot lie here where Defendants provided Plaintiff with a reasonable avenue for complaint and where they also took prompt and appropriate remedial action to address the known harassment.

In her brief in opposition to Defendants' motion for reconsideration, Plaintiff argues that "while there has been no finding of who vandalized plaintiff's vehicle, there is evidence that supervisors were involved in the totality of the circumstances that created the hostile work environment." (Doc. No. 109 at 2.) However, Plaintiff has not put forward sufficient evidence of any acts by her supervisors that reach the level of severity necessary to establish a hostile work environment claim. See Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (directing courts to "[look] at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" (internal citations and quotation marks omitted)). Indeed, the Court's finding that there were genuine issues of material fact as to the hostile work environment was established primarily on the egregious acts of vandalism by anonymous actors against Plaintiff's car. (See Doc. No. 99 at 16.) With no evidence linking these acts of vandalism with Plaintiff's supervisors, Plaintiff has failed to

6

present sufficient evidence of a hostile work environment based on her supervisors' conduct.[1]

Plaintiff further argues that Defendants are liable under the co-worker standard for liability in Huston because Defendants were "made aware of the alleged harassment and failed to take appropriate remedial action." (Doc. No. 109 at 4.) Specifically, Plaintiff argues that:

> According to Norfolk Southern, they interviewed employees, collected handwriting samples and took other efforts to find the perpetrators, to no avail. However, the defendant misses a very important distinction. All of their purported efforts centered on finding the perpetrator of the previous acts of vandalism. Norfolk Southern did not, in any way, make efforts to ensure that the acts of harassment, discrimination and vandalism would not occur again. Norfolk Southern has provided no evidence that they installed video surveillance, hired extra security, or took any measures to make the workplace a safer place. Therefore, the defendant is vicariously liable in the instant case . . . .

(Id.) Contrary to Plaintiff's assertions, however, Defendants have presented Plaintiff's own deposition testimony as evidence that Norfolk Southern police put up posters seeking information about the 2004 vandalism incident and that security cameras were installed in the parking lot following the incident. (See Doc. No. 110 at 5-6.) Furthermore, Plaintiff has not presented any evidence that she faced any further harassment after the remedial action taken by Defendants to the March 2004 incident; and, as such, the remedial actions taken by Defendants were adequate as a matter of law. Knabe, 114 F.3d at 412 n.8.

Because the Court finds that Defendants cannot be held vicariously liable for the acts of the anonymous actors in this case, the Court will grant Defendants' motion for reconsideration

---

[1] In her opposition brief, Plaintiff relies on her allegations that her supervisor, Mr. Morris, called her a "nigger bitch" in 1997 when they were both employed by Conrail, Norfolk Southern's predecessor. This offensive utterance is too far attenuated to establish a hostile work environment claim.

on the hostile work environment claim. Accordingly, Defendants' motion for summary judgment will be granted as to that claim.

B. **Title VII Discrimination Claim**

Defendants next argue that the Court erred when it failed to consider the merits of whether Plaintiff established a Title VII discrimination claim. In the October 22, 2009 Order, the Court addressed Defendants' challenge that Plaintiff's Title VII claims had not been administratively exhausted. (Doc. No. 99 at 11-14.) Finding that the discrimination claim had been administratively exhausted, the Court allowed the claim to proceed.

Defendants argue that the Court should have gone one step further to address the merits of Plaintiff's Title VII discrimination claim. Yet while Defendants squarely challenged the merits of Plaintiff's Title VII termination and hostile work environment claims in their motion for summary judgment, Defendants did not address the discrimination claim in the same direct manner. Instead, in addressing Plaintiff's charges from 2003 and 2004 that resulted in EEOC right to sue letters, Defendants did so under the rubric of a Title VII hostile work environment claim. (See Doc. No. 81 at 9-18.)

A defendant may not properly raise a motion for reconsideration if she failed to raise the argument in her motion for summary judgment. See RST (2005) Inc. v. Research in Motion Ltd., 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (finding that where party did not raise an argument in its summary judgment papers, a motion for reconsideration should not be used to advance theories not previously argued); Cameo Homes, Inc. v. Kraus-Anderson Const. Co., No. Civ. 02-2894, 2003 WL 23100876, at *1 (D. Minn. Dec. 30, 2003) (unpublished opinion) ("A motion to reconsider should not serve as a vehicle to identify facts or raise legal arguments which could

8

have been, but were not, raised or adduced during the pendency of the motion of which reconsideration is sought." (citation and internal quotation marks omitted)). This case presents a different scenario, however, because although Defendants failed to include a separate section addressing Plaintiff's Title VII discrimination claim, Defendants did reference Plaintiff's failure to present a prima facie discrimination claim when assessing her hostile work environment claim. Specifically, in the summary judgment reply brief, Defendants asserted:

> Despite ample opportunity, Plaintiff has submitted no record evidence to carry her burden to identify appropriate comparators. . . . In nearly two years of litigation, Plaintiff has neither sought discovery nor introduced evidence on the race, positions, or disciplinary histories of any coworkers, nor about the alleged offenses any coworkers committed and the punishments they may have received. Thus, Plaintiff's "different penalties" allegations are not evidence of bias; they remain mere allegations, and are insufficient to defeat summary judgment.

(Doc. No. 81 at 11-12; see also id. at 1 n.1.)

Because Defendants included this argument in the portion of their brief arguing against Plaintiff's hostile work environment claim, the Court did not analyze it in the context of a Title VII discrimination claim. However, reconsideration is an appropriate course of action in this case for several reasons. First, the motion does not ask the Court to change course from its previous order, but rather, invites the Court to go one step further to review the merits of the discrimination claim. Second, the motion does not raise a new argument, as Defendants clearly referenced the merits of Plaintiff's discrimination claim in the context of discussing the Title VII hostile work environment claim.[2] In this way, the finality of judgment guarded by the Court in

---

[2] The Court notes that by merely citing to 42 U.S.C. § 2000e-2 in Count Nine of her complaint, Plaintiff did not make clear whether her claim was for discriminatory action in the course of her employment, discriminatory termination, or both. (See Doc. No. 1, Ex. A.) Thus,

9

assessing the motion for reconsideration is not disturbed, as the merits of Plaintiff's discrimination claim have not yet been addressed. See also Buffa v. N.J. State Dep't of Judiciary, 56 F. App'x 571, 575 (3d Cir. 2003) (finding that district court did not err in granting motion for reconsideration where it had overlooked certain arguments, factual admissions, and relevant caselaw set forth by defendants, where such admissions and cited cases could impact the analysis of the motion for summary judgment); Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (noting that a motion for reconsideration is proper for "factual and legal matters that the Court may have overlooked" (citation omitted)). Likewise, judicial efficiency and economy are furthered by assessing the sufficiency of a plaintiff's evidence at the summary judgment stage.

The Court will grant the motion for reconsideration and consider the merits of the discrimination claim. Title VII prohibits discrimination with respect to compensation, terms, conditions, or privileges of employment because of a claimant's race or gender. 42 U.S.C. § 2000e-2(a)(1). Where there is no direct evidence of such discrimination, a court applies the McDonnell Douglas burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). As explained by the Third Circuit:

> Briefly summarized, the McDonnell Douglas analysis proceeds in three stages. First, the plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the

---

it is understandable that Defendants dealt with Plaintiff's claims by briefing the discriminatory termination and hostile work environment claims in response to Count Two (hostile work environment) and Count Nine.

> legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999) (internal citation omitted). Under this framework, a plaintiff must first establish a prima facie case of race discrimination by showing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) similarly situated members of other racial classes were treated more favorably or other circumstances exist that give rise to an inference of unlawful discrimination. Id. at 410-11; see also Brown v. Hamot Medical Ctr., 323 F. App'x 140, 143 (3d Cir. 2009) (affirming district court finding that plaintiff had not established a prima facie case because plaintiff failed to show that any similarly situated male was treated more favorably than she); Davis v. City of Phila. Water Dep't, 57 F. App'x 90, 91 (3d Cir. 2003) ("Where evidence of allegedly disparate treatment meted out to 'similarly situated' employees outside of the protected class is relied upon, those individuals must 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" (citation omitted)).

Defendants challenge Plaintiff's prima facie case as to the third element, arguing that Plaintiff has failed to submit record evidence of appropriate comparators to raise an inference of discrimination. The analysis of whether someone is similarly situated to the plaintiff "requires the court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner." See Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004) (applying McDonnell Douglas in the context of the New Jersey Law Against Discrimination); see also Tice v. Centre Area Transp. Auth., 247 F.3d 506, 518 n.10 (3d Cir. 2001) (noting that process of determining "similarly situated" employees can be a "complicated

11

one"). In addition to job function and seniority level, the Court must examine "other factors relevant to the particular workplace." Monaco, 359 F.3d at 305. In her opposition brief, Plaintiff points to her allegation that she was sent home and lost a day of pay for failure to wear proper footwear, while her white male co-worker, Paul Snyder, merely received a noncompliance letter for the same infraction. (Doc. No. 109 at 6.) Plaintiff also points to her allegation that in July 2003, after failing to wear safety glasses, she was placed in a safety training program, while her male co-worker, Richard Hiebach, received a letter of non-compliance for the same infraction. (Id.) However, Plaintiff does not point to any evidence to demonstrate that she is similarly situated to either of these co-workers, that they held similar positions, had similar disciplinary or employment histories, or worked under the same supervisors. Because Plaintiff has not set forth any of this information, the Court is unable to draw the inference that Plaintiff was treated unfavorably on the basis of her race or gender.[3]

At the summary judgment stage, Plaintiff may not rely on mere allegations; she must produce sufficient evidence to support her claims. Accordingly, Plaintiff has failed to make out a prima facie case of discrimination, and summary judgment must be granted to Defendants on the Title VII discrimination claim.

### III. Conclusion

For the foregoing reasons, Defendants' motion for reconsideration will be granted. An

---

[3] Even if such evidence had been presented, Plaintiff still fails to satisfy the McDonnell Douglas framework to defeat summary judgment. Defendants have articulated that the disciplinary action taken against Plaintiff was for legitimate, nondiscriminatory reasons aimed at workplace safety. Plaintiff has not presented any evidence demonstrating that the reasons presented by Defendants are a mere pretext.

order consistent with this memorandum follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOYCE ROBINSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:07-cv-1641 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| CONSOLIDATED RAIL CORPORATION, | : | |
| (A Pennsylvania Corporation licensed to do business in New Jersey); NORFOLK SOUTHERN CORP., NORFOLK SOUTHERN RAILROAD CORP., JOHN DOES (1-10), AND ABC CORPORATION (1-10), | : | |
| Defendants | : | |

## ORDER

**AND NOW**, on this 28th day of September 2010, upon consideration of Defendants' motion for reconsideration (Doc. No. 104), it is **HEREBY ORDERED THAT** Defendants' motion for reconsideration is **GRANTED**. In accordance with this Court's accompanying memorandum, Plaintiff's Title VII hostile work environment and discrimination claims are **DISMISSED**.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania